In the Matter of the Petition of William A. Righter to Vacate an Assessment.

The petition upon which proceedings were instituted to vacate an assessment for regulating and grading a street in the city of New York, authorized by the act of 1871 (Chap. 226, Laws of 1871), charged in substance that the commissioner of public works fraudulently combined and colluded with the contractors to let the contract at an extravagant price. The contract in question was not let at a public letting, but was what is known as "a special contract," the commissioner having invited four persons to bid for the work. The persons so invited put in bids for "filling," which was the main item, ranging from $1.43 to $1.60 per cubic yard. The contract was awarded for $1.47. The petitioner upon the hearing offered in evidence the "bid-book" of the department of public works, containing a record of bids received for public lettings prior and subsequent to the contract in question, relating to streets in the same vicinity, by which it appeared that filling was contracted for at prices not exceeding eighty cents per cubic yard. This evidence was rejected. *Held* error; that the commissioner, in the absence of evidence to the contrary, must be presumed to have known the usual prices paid for the work, and the evidence was competent on the issue of fraud. Also *held*, that it was competent as bearing upon the alleged combination and collusion to prove the bids by the selected bidders for the other special contract work and the contracts awarded therefor.

(Argued March 20, 1883 ; decided March 30, 1883.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, made at the February term, 1883, which affirmed an order of Special Term which denied the application of the petitioner above named to vacate an assessment for regulating and grading Eighty-fourth street in the city of New York.

The material facts are stated in the opinion.

*Samuel Hand* for appellant. It was error to reject the evidence offered of the bids for filling on previous and subsequent contracts in the same vicinity. (23 Hun, 355 ; 85 N. Y. 646 ; *Harrison* v. *Glover*, 72 id. 451, 454 ; *Cliquot's Champagne*, 3 Wall. 143 ; *Lusk* v. *Druse*, 4 Wend. 313.) The requirements of the ordinances of the common council were, by force

of the several statutes authorizing them, as obligatory and mandatory as to the manner of contracting for public works as if the same were part of the statutes themselves. (*Smith* v. *Mayor, etc.*, 10 N. Y. 508; *Russ* v. *Mayor, etc.*, 10 N. Y. Leg. Obs.; *People, ex rel. Dunsmore,* v. *Croton Bd.*, 6 Abb. Pr. 58; *People, ex rel. Cummings,* v. *Croton Aq. Bd.*, 26 Barb. 240; *In re Merriam*, 84 N. Y. 601; *Smith* v. *Mayor, etc.*, 10 id. 508.) The expression in the act of 1871 (Chap. 226) "in such manner as by him shall be deemed necessary and proper," did not relieve the superintendent from the necessity of advertising and letting to the lowest bidder. (*In re Weil*, 83 N. Y. ·543; *In re Robbins*, 82 id. 131.) It is not open to question that the price at which a contract is let by a public officer, when he lets it at private letting instead of public letting, may be evidence of fraud. (*Matter of Mead*, 74 N. Y. 216; *Matter of Raymond*, BARRETT, J.; *Lawrence* v. *Mayor*, opinion of WHEELER, J.)

*D. J. Dean* for respondent. The failure of the commissioner of public works to advertise for bids and proposals for the work is no sufficient ground for invalidating the assessment. (Laws of 1861, chap. 308; Laws of 1870, chap. 137, § 104; *Greene* v. *Mayor*, 60 N. Y. 303; *People, ex rel. Ross,* v. *Brooklyn*, 69 id. 605; *Kingsley* v. *Brooklyn*, 7 Abb. N. C. 42; affirmed, 78 N. Y. 200; *Goodrich* v. *Russell*, 42 id. 177–184.) Chapter 226, Laws of 1871, section 5, confers authority to impose the assessment for the expenditure actually made by the city in performing the work, whether incurred legally or otherwise. (*Brown* v. *The Mayor*, 63 N. Y. 240; *In re Van Antwerp*, 56 id. 261; Dillon on Mun. Corp., § 46; *Hoyt* v. *Thompson*, 19 N. Y. 218; *Hasbrouck* v. *Milwaukee*, 21 Wis. 217; *Guilford* v. *Sup'rs of Chenango*, 3 Kern. 143; *Brewster* v. *Syracuse*, 19 N. Y. 116; *Howell* v. *Buffalo*, 37 id. 267; 50 id. 502.) The evidence in relation to bids to regulate and grade other streets during the years 1872 and 1873 was properly excluded. (*Gouge* v. *Roberts*, 53 N. Y. 619; *Jaeger* v. *Kelly*, 52 id. 274; Story on Eq. Jur., §§ 244,

245; *Davidson* v. *Little*, 22 Penn. St. 245–251; *Matter of Eightieth St.*, 31 How. 199 ; *Kingsley* v. *Brooklyn*, 7 Abb. N. C. 28–44.)   The allegation of fraud to be sufficient should be clear and explicit.   (Moak's Van Santvoord's Plead. 356 ; *McMurray* v. *Thomas*, 5 How. Pr. 14 ; *Barber* v. *Morgan*, 51 Barb. 116.)   Mere inadequacy of price is not sufficient to prove fraud.   (*Jaeger* v. *Kelly*, 52 N. Y. 274 ; Story on Eq. Jur., §§ 244, 245 ; *Davidson* v. *Little*, 22 Penn. St. 245–251; *Matter of Eightieth St.*, 31 How. 199 ; *Kingsley* v. *Brooklyn*, 7 Abb. N. C. 42.)   If the court finds that there was any such excess in the cost, or extravagance or carelessness in the matter of contracting, as to create a reasonable suspicion of bad faith, the only remedy to which the petitioners would be entitled would be a reduction in proportion to the amount to which the expense had been thus unlawfully or negligently increased. (Laws of 1870, chap. 383, § 27; *In re Merriam*, 84 N. Y. 596; *In re Met. Gas-light Co.*, 85 id. 526 ; *In re Pelton*, id. 651.)   The power to reduce and modify the amount according to the merits, as shown by the proof, is inherent in the court without the aid of the statute of 1870.   (*In re St. Joseph's Asylum*, 69 N. Y. 353 ; *In re Merriam*, 84 id. 651.)

*Per Curiam.*   The assessment in question was for the regulating and grading Eighty-fourth street, authorized by chapter 226, Laws of 1871.   The petition alleged that the work was let at grossly extravagant prices, greatly in excess of the usual, ordinary and market prices for such work, and much greater than the prices for similar work in the same and other portions of the city, paid to contractors under contracts let at public lettings by the commissioner of public works, and his predecessor in office, and " that the officer by whom the contract (in question) was made, well knowing these facts, and in violation of his duty in the premises, and in pursuance of a corrupt conspiracy and combination, let the contract for this and similar work to a ring of contractors at the aforesaid extravagant prices."

These allegations, fairly construed, charge that the commis-

sioner combined and colluded with the contractors in committing a fraud upon the public and property owners in the letting of the contract in question at an extravagant price, and any proof tending to support the charge was admissible. The contract in question was known as a special contract. It was not let at a public letting. The commissioner of public works in the fall of 1872 invited four persons, among whom was the contractor in this case, to bid for work authorized by the act referred to, on a large number of streets, including Eighty-fourth street. The persons so invited put in bids for the several pieces of work, and for *filling*, which was the main item, the bids ranged from $1.43 to $1.60 per cubic yard. The contract for the work on Eighty-fourth street was awarded November 19, 1872, at the price for filling, of $1.47 per cubic yard. Several witnesses called by the petitioner, acquainted with the value of such work, testified that a fair price for filling was from sixty to seventy cents per cubic yard.

No work under any of the contracts was commenced until October, 1873, nearly a year after the contract in question was let. The petitioner offered in evidence the bid book of the department of public works, which contained a record of all bids received in pursuance of public advertisement, for regulating and grading streets and avenues during the years 1872 and 1873, both prior and subsequent to the letting of the contract in question (where filling was required and bid for), and relating to streets in the vicinity of Eighty-fourth street, and in the upper parts of the city, and of the contracts upon such proposals. By these contracts it appeared that the filling was contracted for at a price not exceeding eighty cents per cubic yard.

The petitioner also offered in evidence the bid book of special contracts containing the bids by the four selected contractors, for the grading and regulating of the streets regulated and graded under the act of 1872, as to which bids were specially invited, as before stated, and he also offered in evidence the awards made thereon. This evidence last referred to (the par-

ticulars of which are disclosed by the record) would justify an inference of a prior arrangement between the several bidders in respect to their bids. Five of the contracts were awarded to one of the bidders, four to each of two others, and one to another.

The court at Special Term rejected both classes of evidence. We think the evidence offered was admissible upon the issue of fraud. The commissioner of public works, in the absence of evidence to the contrary, must be presumed to have known of the usual prices paid for filling at or about the time the special contracts were made under contracts let at public lettings, and the bids made for such work were some evidence of the fair value of this work. If he knew that the prices in the special contracts were grossly extravagant, it would be a fact bearing upon the alleged fraud. So also it was competent, as bearing upon the alleged combination and confederacy, to prove the other bids by the selected bidders for the special contract work, and the contracts awarded therefor. If an inspection of those bids would suggest an arrangement between the several bidders, and it should be found that the commissioner of public works was put upon inquiry, the petitioner was entitled to the benefit of this evidence.

We express no opinion as to the force of the evidence offered, but we think the judge erred in rejecting it as he did on the ground that it was irrelevant and incompetent. This evidence is subject to explanation, and it is not impossible that it may be shown that it is entirely consistent with good faith on the part of the commissioner of public works in letting the contract in question, but this can only be determined when all the competent evidence offered has been received and considered.

Without, therefore, considering the other questions, we are of opinion that upon the ground that competent evidence was rejected the orders of the Special and General Terms should be reversed, and that the case should go back for rehearing.

Orders of Special and General Terms reversed, and a rehearing ordered.

All concur.

Orders reversed.